No. 14,551.

DOUGLASS ET AL. *v*. WATER CONSERVATION COMPANY ET AL.
(114 P. [2d] 288)

Decided June 2, 1941.

Mr. WILLIAM R. KELLY, Mr. HATFIELD CHILSON, for plaintiffs in error.

Mr. L. R. Temple, Mr. Albert P. Fischer, Mr. Winton M. Ault, Mr. Herbert M. Baker, Mr. Mortimer Stone, Mr. Alden T. Hill, for defendants in error.

*En Banc.*

Mr. Chief Justice Francis E. Bouck delivered the opinion of the court.

We are asked to review a judgment of dismissal entered in the district court of Larimer county against the plaintiffs in error upon the latter's standing on a complaint to which general demurrers had been interposed and sustained.

The complaint is voluminous and sets forth a complex situation alleged to have been brought about by the defendants in error, some of whom were associated with the plaintiffs in error in certain corporations and others of whom are alleged to have actively aided and abetted the former. The ultimate question is whether the actions charged have unlawfully deprived the plaintiffs in error of property, entitling them to an accounting.

In order that the controversy may be presented exactly as it came before the lower court, the complaint is quoted verbatim as follows:

"I.

"That the defendants, The Water Supply and Storage Company and The Water Conservation Company and The West Side Construction Company, are all corporations organized and existing under the laws of the State of Colorado.

"II.

"That in the spring of 1929, to get money subscribed to complete the West Side Collection Ditch from Rawah Creek on the Laramie River, and to give each subscriber security for repayment thereon, the defendant L. C. Moore and others incorporated The West Side Construction Company under the laws of Colorado, as an instrumentality to take the construction contract and to give

all subscribers equal security for repayment thereof, share for share, by stock in said company on a basis of one (1) share for each One Hundred Dollars ($100.00) subscribed toward said construction cost. That all of the plaintiffs' stock was subscribed in that year, and cash was paid therefor by the plaintiffs at One Hundred Dollars ($100.00) per share of contribution, through The West Side Construction Company, to accomplish such construction and to participate in said security of said second mortgage.

"That said stock has been continuously held by plaintiffs since the said subscription of said moneys except that the shares of the plaintiff Atwell were originally issued to her husband, D. E. Atwell, since deceased; the shares of the plaintiff Pullis were originally issued to her husband, Augustus Pullis, since deceased; the shares of the plaintiff McArthur were originally issued to D. R. McArthur, since deceased; and the shares of the plaintiffs May Mullen Dower, The J. K. Mullen Corporation, John M. O'Connor, Ellen Mullen Weckbaugh, and Katherine M. Neelands were originally issued to J. K. Mullen, since deceased; through which several decedents' estates said plaintiffs, by purchase, legacy, and inheritance, have derived their holdings.

"That the shares in said company so held by the plaintiffs are as follows:

"P. K. Alexander .......................................................... 2½
"F. J. Allnutt .............................................................. 1
"Mrs. D. E. Atwell ....................................................... 10
"L. M. Blacker ............................................................. 10
"Bollinger & Robinson ................................................. 5
"George W. Bond & Son ............................................... 2½
"B. F. Clark ................................................................. 5
"Earl Douglass ............................................................ 10
"May Mullen Dower ..................................................... 12
"The Greeley Laundry Company .................................... 1
"Charles Hansen .......................................................... 1
"L. P. McArthur ........................................................... 2½

"A. M. Macy ........................................................ 2
"The J. K. Mullen Corporation.............................. 2
"E. F. Munroe........................................................20
"Katherine M. Neelands...................................... 6
"John M. O'Connor .............................................. 6
"J. M. B. Petrikin................................................ 4
"Inez M. Pullis .................................................... 2
"John E. Shafer .................................................. 2
"L. L. Stimson......................................................50
"Carl C. Tams...................................................... 1
"Ellen Mullen Weckbaugh....................................12
"Frank M. Weller.................................................. 1

"Total...............................170½

"That the total shares of said company outstanding are six hundred eighty-four and one-half (684½).

"That the plaintiffs, The Greeley Laundry Company and The J. K. Mullen Corporation, are both corporations organized and existing under the laws of the State of Colorado.

"III.

"That R. C. Wykert is president and, for many years, has been a director of The Water Supply and Storage Company, and the defendant J. I. Wykert is his son and, plaintiffs are informed and believe and so allege, has been acting for himself, his father, and said company in the matters hereinafter set forth.

"That at all times hereinafter mentioned, subsequent to January 1, 1937, the defendant, L. C. Moore, was president of The West Side Construction Company, and that the defendant, Rodney Hughes, was secretary of said company, and said two and the defendant, A. J. Whistleman, constituted the sole directors of said company. That for many years, the said Rodney Hughes has been private secretary to said Moore, and the said Whistleman was, on June 1, 1937, and for several years just previous has been the employee and business associate of said Moore.

"That the defendants, A. P. Fischer and A. E. March, are lawyers, and with defendant, J. I. Wykert, are the sole directors of The Water Conservation Company.

## "IV.

"That the defendant, L. R. Temple, in the mortgage and stock purchases and foreclosure matters herein alleged, was and is the attorney for all three (3) corporations, the defendants, The Water Supply and Storage Company, The Water Conservation Company, and The West Side Construction Company, and for the said defendants, J. I. Wykert and R. C. Wykert, A. E. March, and A. P. Fischer, and in early 1938 entered into a law partnership agreement with the defendant A. P. Fischer. That the interests of all defendants at all said times were and are antagonistic to the plaintiffs as stockholders in The West Side Construction Company, and all the defendants, at the times of their acts herein alleged, were well familiar with said fact.

## "V.

"That on the 2nd day of January, 1925, The Laramie-Poudre Irrigation Company gave a mortgage upon the property, franchises, rights, and privileges then owned by The Laramie-Poudre Irrigation Company and fully described in said mortgage, which was filed for record in the office of the Clerk and Recorder of Larimer County, Colorado, on the 4th day of February, 1926, and there recorded in Book 535 at Page 204, to which public record reference is hereby made. That the said property mortgaged consisted of an extensive and valuable irrigation system in Larimer and Weld Counties, Colorado, of about seventy-five (75) miles of canals, about twenty (20) reservoirs, and the Laramie-Poudre tunnel two and one-fourth ($2\frac{1}{4}$) miles long from the Laramie River into the Cache la Poudre River, all constructed in the thirty (30) years beginning with 1902 at a cost in excess of Three Million Dollars ($3,000,000.00) and for the irrigation of lands in the Cache la Poudre valley. That said

irrigation system is more particularly described in said mortgage to which reference is made. That the said mortgage was given to secure the payment of One Hundred Thousand Dollars ($100,000.00), plus advance interest computed at Thirty Thousand Dollars ($30,000.00), making the total of One Hundred and Thirty Thousand Dollars ($130,000.00), which indebtedness was, from time to time, extended and was due and owing on June 1, 1937. Said mortgage is hereinafter referred to as the first mortgage.

"VI.

"That as of date April 13, 1929, said The Laramie-Poudre Irrigation Company entered into a certain written agreement for the completion by The West Side Construction Company of said West Side Collection Ditch, to bring water to the said tunnel and thence into the Poudre River, and raised the money so to do by the contributions in cash from plaintiffs and others and secured the expenditures of said moneys by a second mortgage on the identical property secured by said first mortgage, described in paragraph V. That said mortgage given The West Side Construction Company was recorded on the 10th day of October, 1929, in the office of the County Clerk and Recorder of Larimer County, Colorado, in Book 595 at page 417, to which reference is hereby made.

"VII.

"That the defendant, The Water Supply and Storage Company, coveted and desired to get for itself, at a fraction of its worth, the said highly costly and valuable Laramie-Poudre tunnel, ditches, reservoirs, irrigation works, and water rights of said The Laramie-Poudre Irrigation Company, and some time shortly preceding June 1, 1937, and at an exact date unknown to plaintiffs, said Temple proposed to procure for it the control and use of said properties against the will of said The Laramie-Poudre Irrigation Company and at a sacrifice or foreclosure price, and to do this by means of

buying for The Water Supply and Storage Company control of the mortgages against the said properties and bringing quick foreclosure suits against the same, and thereby obtaining said properties at a cost of no more than the mere indebtedness against the said valuable and extensive irrigation system and water rights of The Laramie-Poudre Irrigation Company.

## "VIII.

"That the total indebtedness against the said properties, consisting of said tunnel, reservoirs, canals, water rights, and appropriations of said irrigation system, other than said mortgage to The West Side Construction Company, was in an amount less than One Hundred Sixty-eight Thousand Dollars ($168,000.00) on June 1, 1937. That said properties were, at said time, of a value more than five (5) times the amount of said indebtedness, to-wit, were of a value in excess of Eight Hundred and Fifty Thousand Dollars ($850,000.00). That at the time of the judgment under said first mortgage foreclosure herein mentioned, there was a net value of said security of more than One Thousand Dollars ($1,000.00) for each share of The West Side Construction Company outstanding.

## "IX.

"That in the latter part of May, 1937, acting upon the direction of and through its said attorney, the defendant The Water Supply and Storage Company did instigate the wrongful and fraudulent enterprise to accomplish by machination as herein alleged the diversion to itself of the said properties. That it set up the scheme to do this by means of buying, at a discount, and foreclosing, through a corporation it, its said attorney, and the defendants Wykert created, the said first mortgage notes and buying more than a majority of the stock of The West Side Construction Company, and, through controlling thereby the management and action of said The West Side Construction Company to manipulate and

withhold the action of said corporation and to suppress redemption by the said second mortgagee and to hinder and defeat a refinancing by The Laramie-Poudre Irrigation Company and by The West Side Construction Company of the said indebtedness against the said property.

"X.

"That the execution of said scheme was, then and there, entered upon by the said Temple and his clients, The Water Supply and Storage Company and the said defendants, Wykert and March, to buy said mortgages for said company and for private profit to themselves. That they set about to do this in the name of a corporation to be formed and controlled by the said Temple and The Water Supply and Storage Company and to have the foreclosure brought in the name of said new corporation. That a part of said scheme was to cause the new corporation, forthwith at its creation, to enter into a contract of sale to The Water Supply and Storage Company at a profit of over Seventy-five Thousand Dollars ($75,000.00) to them, to-wit, at the price of Two Hundred and Fifty Thousand Dollars ($250,000.00), to be paid at conclusion of said foreclosure upon expiration of period of redemption and accrual of sheriff's deed or title under said first-mentioned mortgage foreclosure.

"XI.

"That on or about June 1, 1937, acting in pursuance of said scheme and plan, the said The Water Supply and Storage Company and its said attorney did cause to be formed such new corporation, to-wit, the defendant The Water Conservation Company, as the creature of said Temple, Wykerts, and March and of the said The Water Supply and Storage Company for the purpose of purchasing said first mortgage and the controlling interest in the stock of The West Side Construction Company, the holder of said second mortgage, and for initiating and pressing said foreclosure of it and obtain-

ing sheriff's deed thereunder to deliver title to the defendant The Water Supply and Storage Company, or whom it should direct, and said profit to the defendants, and about said date, at an outlay not exceeding One Hundred and Twenty Thousand Dollars ($120,000.00), they did purchase the said first mortgage and four hundred and ninety-three (493) shares out of the six hundred and eighty-four and one-half (684½) total shares of stock of The West Side Construction Company, and did draft, execute, and file the Articles of Incorporation of their said new company and form the said The Water Conservation Company.

## "XII.

"That the said The Water Supply and Storage Company and the said defendants Wykerts, Temple, and March, as the instrumentalities or directors, who, under their direction, would and do have control of the said new corporation, to-wit, The Water Conservation Company, did make as directors thereof the said defendants J. I. Wykert, A. E. March, and the wife of the said L. R. Temple. That said defendants, well knowing of said scheme and purpose, did consent to be made such directors. That said defendants did enter upon said plan to obtain, under the direction of said The Water Supply and Storage Company and of its said attorney, the assignment to their control, in the name of said new corporation, of the mortgage notes of said first mortgage and the said four hundred and ninety-three (493) shares of stock of The West Side Construction Company, the said second mortgagee, and to control and neglect redemption under said second mortgage.

"That the said directors so named for said The Water Conservation Company did enter upon their offices and did continue in the performance of the said scheme with the exception that, about the month of May, 1938, the said parties then caused the said defendant A. P. Fischer, the law partner of said Temple, to be made successor of

the wife of said L. R. Temple, as director of The Water Conservation Company.

### "XIII.

"That the defendants Rodney Hughes, A. J. Whistleman, and L. C. Moore, knowing of the said scheme, joined with the defendants The Water Supply and Storage Company, The Water Conservation Company, and the said Temple, Wykerts, and March, in the accomplishing of said design in this, to-wit, that, about June 1, 1937, the said Moore and the said Whistleman, directors of The West Side Construction Company, were holders of and in control of Fifty-one Thousand Dollars ($51,000.00) out of the total One Hundred and Thirty Thousand Dollars ($130,000.00) of the said notes under the said first-named mortgage, and did cause the same to be placed in the control of the said The Water Conservation Company and the said Temple for foreclosure, and did combine with and thereafter act under the direction of the said Temple, Moore, Wykerts, March, and Fischer with reference to the said foreclosures and proceedings thereunder against the said property of The Laramie-Poudre Irrigation Company so given as security to The West Side Construction Company mortgage, as well as under the said prior mortgage so on June 1, 1937, acquired by The Water Conservation Company. That the said L. C. Moore dominated and controlled the said The West Side Construction Company through his private secretary, the defendant Rodney Hughes and the defendant A. J. Whistleman, who, with the said L. C. Moore, constitute the president, secretary, and all of the officers of The West Side Construction Company, which so had come under the control of the said other defendants through the fact that The Water Conservation Company had gained control of four hundred and ninety-three (493) out of its total six hundred and eighty-four and one-half (684½) shares.

## "XIV.

"That, then and there, the defendants did, all of them, wrongfully, unlawfully, and fraudulently conspire, collude, and combine together as herein set forth to wrong, cheat, and defraud these plaintiffs and all those stockholders of The West Side Construction Company who held stock which had not been so acquired and put under the control of the defendants, The Water Supply and Storage Company and of said Temple, Wykerts, and March, through the said The Water Conservation Company. That upon his accession to the office of director in said company, about July 1, 1938, the defendant A. P. Fischer, well knowing of said scheme, of said Two Hundred and Fifty Thousand Dollar ($250,000.00) sale, and of said redemption rights and duties, did join in said conspiracy and combine with the other defendants to effectuate the omission of said redemption.

## "XV.

"That pursuant to said unlawful and fraudulent combination and conspiracy of the said defendants, all of the said defendants Wykerts, Temple, March, Moore, Hughes, and Whistleman, did counsel and advise together and, in the furtherance thereof and in the effectuating of the unlawful and fraudulent purpose thereof, did perform the following acts and did employ the following means:

"They did, about June 1, 1937, acquire, at large discount and cause to be assigned to said The Water Conservation Company, the notes secured by the said first mortgage and the said four hundred and ninety-three (493) shares of The West Side Construction Company, and did, on said date, have complaint verified by said March therefor, and did institute, in the District Court of Larimer County, Colorado, a foreclosure of said first mortgage and asking also Eight Thousand Five Hundred Dollars ($8,500.00) as attorney fee for said Temple, being case No. 7681 in this Court, by The Water Conser-

vation Company, as plaintiff, against said The Laramie-Poudre Irrigation Company and the defendant The West Side Construction Company, in which defendant Temple appeared as attorney for the plaintiff there, and the defendant The West Side Construction Company permitted a default.

"That the defendants did prosecute suit on said first mentioned mortgage to judgment and decree of foreclosure for the sum of One Hundred Sixty-nine Thousand Four Hundred and Nineteen Dollars and Ninety-eight Cents ($169,419.98), including Two Thousand Five Hundred Dollars ($2,500.00) attorney fee to said Temple, on the 6th day of November, 1937, and did cause sheriff's sale to be made thereunder by the sheriff of Larimer County on the 11th day of December, 1937, for the full amount of judgment, interest, and costs, to-wit, for One Hundred Seventy Thousand Six Hundred and Seven Dollars and Thirty-six Cents ($170,607.36), to said corporation defendant The Water Conservation Company.

"That notwithstanding these things done and their interests antagonistic to said company, the defendants did cause the said Temple to be hired by the said Moore, Hughes, and Whistleman, directors, as attorney also for The West Side Construction Company, to foreclose said second mortgage, and caused him to be paid Four Thousand Dollars ($4,000.00) of its stockholders' money for his services therein.

"That the defendants, so in control thereof, in pursuance of said scheme, did omit to cause to be called any stockholders' meeting of The West Side Construction Company since January, 1937, for either change or election of officers thereof or to do any act whatsoever to save its property from said first mortgage foreclosure by redemption or otherwise, but, by neglect and intention, combined to allow its redemption period to lapse.

## "XVI.

"That by reason of their offices and relationships herein set forth, the said defendants so in control of its action by directorships, stock control, and positions of attorney were and are under special duties of diligence, good faith, and trust toward all of the stockholders of The West Side Construction Company and toward the plaintiffs.

## "XVII.

"That the defendants, L. C. Moore and A. J. Whistleman, had special interests to serve, antagonistic to The West Side Construction Company, in the matters herein set forth, in that the said two persons, either for themselves or for members of their immediate families whom they represented, had acquired at great discount and had control of fifty-one-one hundred thirtieths (51/130) of the mortgage indebtedness, represented by the mortgage on said property described in paragraph V. That on June 1, 1937, the said A. J. Whistleman was a director in both The West Side Construction Company and The Laramie-Poudre Irrigation Company and was the employee in general affairs of management of the properties of L. C. Moore and of Mrs. A. J. Whistleman and of her daughter, Georgia Fleming, all of which three persons, in respective shares unknown to plaintiffs, were owners of said fifty-one-one hundred thirtieths (51/130) of said first mortgage indebtedness. That said defendants in pursuance of said scheme and combining with the other defendants did put into control of said The Water Conservation Company their interests in said mortgage and in three hundred and thirty-five (335) shares of The West Side Construction Company, and cooperated together with the said L. R. Temple and The Water Supply and Storage Company and The Water Conservation Company to bring about the said foreclosure on the said mortgage of January 2, 1925, given by The Laramie-Poudre Irrigation Company, and to give

over control of the stock of The West Side Construction Company to the said The Water Conservation Company, and thereby to omit and cause to lapse such redemption.

"XVIII.

"That without trial contested, but by stipulation entered into between said The West Side Construction Company and said The Laramie-Poudre Irrigation Company on January 18, 1938, in case No. 7704 in this Court, brought by said Temple as attorney for The West Side Construction Company, it was agreed that payment of Ten Thousand Dollars ($10,000.00) in cash was that day made by The Laramie-Poudre Irrigation Company to the said L. R. Temple, as attorney for The West Side Construction Company, and that thereupon the principal and interest of the indebtedness of said irrigation company under said second mortgage to said construction company (plus Two Thousand Dollars ($2,000.00) granted said Temple as attorney fees for said construction company in said second mortgage foreclosure) was a total of Seventy-four Thousand One Hundred and Eighty-two Dollars and Two Cents ($74,182.02), for which sum, plus costs, it was agreed that The West Side Construction Company should have judgment and foreclosure decree against the said property in said mortgage described. That said judgment was entered, without evidence offered, by stipulated decree on January 18, 1938, as shown by the records of this Court, to which reference is hereby made. That thereunder, and at all times from December 11, 1937, The West Side Construction Company had the right, until September 13, 1938, to redeem said property from said foreclosure sale of December 11, 1937, to the defendant The Water Conservation Company.

"XIX.

"That the defendants, pursuant to said scheme, failed and neglected their duty to make said redemption within nine (9) months after December 11, 1937, either as sub-

sequent encumbrancer or as judgment creditor of The Laramie-Poudre Irrigation Company. That it was the duty of the defendants The Water Conservation Company, The West Side Construction Company, and Temple, as attorney for both of said companies, directing the conduct relative thereto of the other persons defendants, and it was the duty of said The Water Conservation Company, as the holder of four hundred and ninety-three (493) out of the total six hundred and eighty-four and one-half (684½) shares of The West Side Construction Company, by reason of their said fiduciary positions, to use the highest good faith and to make great effort to cause said redemption from said first mortgage foreclosure of said properties. That all defendants had it in their power to cause this to be brought about by cooperating with The West Side Construction Company and with its stockholders, to effectuate said redemption. That to do otherwise than to take all such steps as could be done to bring about such redemption constituted neglect, collusion, and cheating by the said defendants as against these plaintiffs and all the stockholders of The West Side Construction Company, other than The Water Conservation Company, and constituted the appropriating and diverting by said defendants to themselves of the assets of The West Side Construction Company to the detriment of the plaintiffs and stockholders of said company other than the defendants.

"XX.

"That, on August 22, 1938, these plaintiffs made oral demands of the defendants Temple, Fischer, Hughes, and Moore, as such attorney and officers of The Water Conservation Company and The West Side Construction Company, that action be taken to make such redemption, and offered to advance to the company the shares of money necessary thereto pro rata to their stock of said construction company, and called upon the defendant

The Water Conservation Company to receipt to the sheriff or advance in money its share in the proceeds of such redemption, pro rata to their respective stockholdings in The West Side Construction Company.

"That on the morning of September 9, 1938, the plaintiffs caused to be tendered to the defendants in The Poudre Valley National Bank at Fort Collins, Colorado, the sum of Fifty-one Thousand Three Hundred and Twenty Dollars ($51,320.00) to be used for an advance to The West Side Construction Company to enable it to make such redemption, and on said morning did serve, upon those to whom it was addressed, notice in writing of such advance, and did call upon and demand of the said defendants that they do their prorata part by causing their creature, The Water Conservation Company, to receipt for its prorata share and to cause said redemption to be made. Said demand was in words and figures as follows:

"Greeley, Colorado,
"September 8, 1938.

"To The West Side Construction Company and to L. C. Moore, Rodney Hughes, and Arthur Whistleman, its directors;

"To The Water Conservation Company and to A. E. March, J. I. Wykert, and A. P. Fischer, its directors; and

"To L. R. Temple, attorney for both of said companies:

"Gentlemen:

"Payable to The West Side Construction Company, in escrow, on behalf of the stockholders of The West Side Construction Company whose names are given at the end of this letter, the undersigned have deposited with The Poudre Valley National Bank of Fort Collins, Colorado, in escrow, $51,320.00, tendered to accomplish redemption of what is known as The Laramie-Poudre Irrigation Company properties from the sale of December 11, 1937, to The Water Conservation Company by the Sheriff of Larimer County, Colorado.

"This remittance is on the understanding and condition that it shall, ratably with other money requisite to redemption from the said certificate of purchase, be a first lien upon the proceeds of said redemption in whatever form said proceeds shall be and until such proceeds can be put into money, and thereupon such money herewith remitted, with legal interest, shall be repaid promptly to the undersigned attorneys-in-fact.

"Again, as previously, we demand that such redemption be made. With these funds we have put in escrow and so offer you, The Water Conservation Company can make the redemption by a mere receipt to the sheriff for its prorata share of the redemption moneys based on its shares in The West Side Construction Company.

"We call upon The Water Conservation Company, as holder of 492 shares out of the total 684½ shares of the stock of The West Side Construction Company, either to pay to the sheriff in cash or to receipt to the sheriff for that proportion of the avails of the redemption and to use so much of the fund so deposited by us in escrow to make the balance necessary for redemption.

"(S.D.)  L. L. STIMSON

"and

"(S.D.)  JOHN L. DOWER

"as Attorneys-in-Fact for

"F. J. Allnutt
"L. M. Blacker
"Bollinger & Robinson
"B. F. Clark
"Earl Douglass
"May Mullen Dower
"The Greeley Laundry Company
"Charles Hansen
"D. R. McArthur Estate
"A. M. Macy
"George W. Bond & Son
"Mrs. D. E. Atwell
"The J. K. Mullen Corporation

"E. F. Munroe
"Katherine M. Neelands
"J. M. B. Petrikin
"Inez M. Pullis
"John E. Shafer
"L. L. Stimson
"Carl C. Tams
"Ellen Mullen Weckbaugh
"F. M. Weller
"P. K. Alexander
"John M. O'Connor

## "XXI.

"That defendants, said corporations, The Water Conservation Company and The West Side Construction Company, so directed by all the other defendants, pursuant to said scheme, could have effectuated said redemption by merely having the Water Conservation Company, as holder of said four hundred and ninety-three (493) shares, receipt to the sheriff for the One Hundred and Twenty-seven Thousand Dollars ($127,-000.00), said The Water Conservation Company's proportionate beneficial interest in said redemption moneys to result from redemption.

"That defendants failed to make any redemption by said The West Side Construction Company so under the control of the other defendants, and thereby so accomplished it that, unless defendants be required to account therefor, the equity in said property held by the plaintiffs and other holders of stock in The West Side Construction Company, excepting The Water Conservation Company, and the other defendants, will be forever lost. Thereby the defendants have gained for themselves and will keep over Seventy-two Thousand Dollars ($72,-000.00), being the difference between the said Two Hundred and Fifty Thousand Dollars ($250,000.00) price at which said property was contracted for sale to The Water Supply and Storage Company and the said sheriff's sale price to The Water Conservation Company,

to-wit, One Hundred Seventy Thousand Six Hundred and Seven Dollars and Thirty-six Cents ($170,607.36).

"XXII.

"That The West Side Construction Company has no indebtedness and no other property of substantial value, but that the net value of its property is in excess of Six Hundred Eighty-four Thousand Five Hundred Dollars ($684,500.00), were said redemption made and if accounting be made to these plaintiffs and The West Side Construction Company stockholders for said profit obtained by the defendants' said wrongful acts. That without said redemption, or a paying over of said profits ratably among the stockholders of The West Side Construction Company, said stock interest of plaintiffs and the other minority stockholders therein is worthless.

"That the defendant The Water Supply and Storage Company has, by knowledge and combination of its officers, thereby diverted and appropriated to itself the value of said property above the Two Hundred and Fifty Thousand Dollar ($250,000.00) cost to it, and the defendants, other than The West Side Construction Company, have taken to their own use the difference of over Seventy-two Thousand Dollars ($72,000.00) remaining above the cost to them of purchase of said first mortgage and four hundred and ninety-three (493) shares of the said company holder of the second mortgage.

"XXIII.

"That plaintiffs have demanded an accounting of the defendant corporations for the profits and avails of said failure to redeem, but have been informed by a majority of the Board of Directors of The Water Conservation Company that it has no intention to make such accounting, and have been informed by the president and the secretary of The West Side Construction Company that it has no intention of doing anything, and have been told by the president of The West Side Construction Company that the whole matter is in the hands of said

defendant Temple, but that the said defendant Temple disclaims any control or authority in the premises, and that The Water Supply and Storage Company has failed to take any action other than to state that it did refer the matter to its Board of Directors and other than to reply, on October 6, through its president, R. C. Wykert, that the matter would be taken up at the next regular meeting of the Board of Directors of the company, and other than said non-committal response, no action has been taken and no accounting has been made.

## "XXIV.

"That by said acts, by their breaches of trust and conspiracy together, and by their said intentional neglects, defendants have cheated the plaintiffs out of the value of their several shares in said The West Side Construction Company and in the property so secured by said second mortgage, which property is of a value of more than Six Hundred Eighty-four Thousand Five Hundred Dollars ($684,500.00) in excess of the first mortgage indebtedness so acquired by The Water Conservation Company against it and is of a value of more than One Thousand Dollars ($1,000.00) as to each of plaintiffs' shares.

## "XXV.

"That by their said acts, defendants The Water Conservation Company, majority and dominating stockholder in, and Moore, Hughes, and Whistleman, directors of The West Side Construction Company, have wrecked it to the intended injury of its stockholders, other than The Water Conservation Company, and to the gain of said last-named company and of The Water Supply and Storage Company and of defendants the said Temple, Wykert, Fischer, and March, by stock control so dominating said failure of redemption by The West Side Construction Company and diverting its new property to their own use.

## "XXVI.

"That the defendants The West Side Construction Company and The Water Conservation Company have no property other than the proceeds of said first mortgage foreclosure so received by The Water Conservation Company and defendants other than said construction company, and so, as above shown, in right received in trust for the stockholders of The West Side Construction Company. That plaintiffs are informed and believe and so allege that said The Water Conservation Company directors will promptly distribute said proceeds of said sheriff's sale among the stockholders of The Water Conservation Company and wind up said corporation, to the exclusion of these plaintiffs out of their rights as minority stockholders in The West Side Construction Company.

## "XXVII.

"That demand on The West Side Construction Company Board of Directors that they bring this suit would be unavailing because of their interests antagonistic to such redemption and such accounting, and because, by their said neglects which have so combined to wreck said corporation, the defendants L. C. Moore, Rodney Hughes, and A. J. Whistleman, directors of The West Side Construction Company, are, themselves, participants in and beneficiaries of said wrongs, and it would be useless to demand that they sue in behalf of said corporation. That it is necessary for plaintiffs to bring this suit on behalf of its stockholders to prevent a failure of justice toward the said company's stockholders who are plaintiffs here and are under the control of the other defendants herein. That the plaintiffs sue in behalf of all the stockholders of said The West Side Construction Company.

## "XXVIII.

"That the defendants should be held, in equity, to account for the value of said property and said attorneys' fees so gained by them, by said acts, from The West

Side Construction Company minority stockholders to the loss and wrong of the plaintiffs.

"That plaintiffs have no plain, speedy, and adequate remedy at law, but only in a court of equity.

"WHEREFORE, the plaintiffs pray judgment and decree:

"1. That the other defendants be adjudged to hold in trust for the plaintiffs and for all the stockholders of The West Side Construction Company the proceeds of that foreclosure by The Water Conservation Company against the irrigation system of The Laramie-Poudre Irrigation Company and The West Side Construction Company described in that mortgage recorded in Book 535 at page 204 of Larimer County, Colorado, records, and also to hold in trust the Six Thousand Five Hundred Dollar ($6,500.00) attorneys' fees of defendant Temple included in said foreclosure and paid Temple by The West Side Construction Company for legal services in foreclosures of said mortgage and of the second mortgage of The West Side Construction Company against the same property;

"2. That the defendants account to plaintiffs for said proceeds and attorneys' fees and be required to pay the same over for the benefit, alike, of all stockholders of The West Side Construction Company;

"3. That a receiver be appointed for The West Side Construction Company to wind up its affairs and to distribute its assets among its stockholders; and

"4. That plaintiffs, on said accounting, have judgment against the defendants for Six Hundred Eighty-four Thousand Five Hundred Dollars ($684,500.00) as the value of said property so under mortgage and judgment to The West Side Construction Company and suffered to be taken by the defendants without redemption thereof by The West Side Construction Company, and also for said Six Thousand Five Hundred Dollars ($6,500.00) attorneys' fees, diverted to defendants, by breaches of trust alleged in the complaint; and

"5. For such other and further relief as to the Court shall seem meet and equitable, and for costs."

To ascertain whether the foregoing complaint is sufficient as against a general demurrer, we must bear in mind the usual principles governing in such circumstances.

■■ First, then, it is necessary to apply the interpretation most favorable to the pleader. In so doing we disregard mere form, searching for the real substance contained in the allegations assailed. Thus we may ignore for instance the alleged fact that things were done by or through certain corporations mentioned and may consider them done by the persons controlling those corporations. It follows that the Water Conservation Company's actions are chargeable to certain defendants in error who organized it. Furthermore, under the allegations there have been drawn into the area of responsibility all defendants in error who contemplated or knowingly adopted the corporate structure in order to constitute it a part of the machinations alleged to have been joined in by all and resulting in the damage complained of.

Taking the underlying principles into consideration, we hold that the complaint as a whole contains a good cause of action. Further analysis or discussion is unnecessary.

The judgment of dismissal is reversed and the case is remanded to the district court for the overruling of the demurrers, for pleading over, and for any other proper proceedings in harmony with this opinion.

Judgment reversed with directions.

MR. JUSTICE BAKKE dissents.